IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **KENNETH E. FINK**, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Civ. Act. No. 06-181-GMS |
| ) | |
| **THOMAS J. CARROLL**, Warden, ) | |
| and **CARL C. DANBERG**, Attorney ) | |
| General of the State of Delaware, ) | |
| ) | |
| Respondents ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, respondents submit the following in response to the petition for a writ of habeas corpus:

1. The grand jury in June 2000 indicted Kenneth Fink, charging him with 15 counts of unlawfully dealing in child pornography (Del. Code Ann. tit. 11, §1109(4)) and 15 counts of possession of child pornography (Del. Code Ann. tit. 11, §1111).[1] In March 2002, a Superior Court jury convicted Fink of all 30 counts. The state supreme court, on direct appeal, affirmed Fink's convictions and sentence. *Fink v. State*, 817 A.2d 781 (Del. 2003). Fink applied for state post-conviction relief in March 2004. Superior Court

---

[1]The indictment is reproduced at pages A48 through A58 of the appendix to the opening brief filed in *Fink v. State*, Del. Supr. Ct. No. 344, 2002.

denied the motion, and on appeal, that decision was affirmed. *Fink v. State*, 2006 WL 659302 (Del. Mar. 14, 2006).

  2. **Validity of search warrant**. Fink, at the time of his crimes, was a practicing lawyer in Wilmington. Fink's crimes came to light during an investigation into his financial affairs. Fink had been suspended from practice in March 2000, and information supplied to the receiver appointed for Fink's law practice indicated that Fink had failed to disclose certain client accounts to the receiver and to bar disciplinary officials. The receiver turned this information over to investigators in the Delaware Department of Justice who in turn applied for a search warrant to search Fink's residence and car. The warrant having been issued, investigators executed the warrant and seized two desktop computers, two computer hard drives, 42 Zip discs, two cd-roms, and three floppy discs from Fink's house. Investigators then obtained another search warrant to serach the various hard drives, discs, and cd-roms. Examining a cd, an officer discovered a picture of child pornography. Investigators then obtained a third warrant authorizing them to search for evidence of child pornography. The execution of the third warrant led to the discovery of more than 190 pictures of child pornography. *Fink*, 817 A.2d at 784-86.

  3. Fink's first contention is that the search of his home violated the Fourth Amendment. DI 1 at ¶12(1). Fink presented this claim on direct appeal, thus exhausting state remedies. The problem for Fink is that having litigated the issue in the

state courts, federal habeas relief is unavailable to him. Under *Stone v. Powell*, 428 U.S. 465 (1976), if the State provides an opportunity for full and fair litigation of a Fourth Amendment claim, then a federal court can not grant habeas relief on the basis that evidence obtained in an unconstitutional search or seizure was introduced at trial. Here, Fink moved under Superior Court Criminal Rule 41 to suppress all of the evidence; Superior Court denied the motion; and Fink challenged the lower court's ruling on appeal to the state supreme court. Fink patently had a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts, and federal habeas review of the Fourth Amendment claim is foreclosed. *E.g., Deputy v. Taylor*, 14 F.3d 1485, 1491 (3d Cir. 1994); *Gilmore v. Marks*, 799 F.2d 51, 56-57 (3d Cir. 1986); *Morris v. Kearney*, 390 F.Supp.2d 422, 428 n.2 (D. Del. 2005).

    4. **Double jeopardy**. Fink was charged with 15 counts of unlawfully dealing in child pornography (Del. Code Ann. tit. 11, §1109(4)) and 15 counts of possession of child pornography (Del. Code Ann. tit. 11, §1111). Before trial, Fink moved to dismiss 29 counts of the indictment on multiplicity grounds.[2] After hearing argument on the motion, the trial judge denied the motion.[3] On appeal, Fink renewed his contention. The state supreme court, however, thought there was no multiplicity problem. According to the court, each "'visual depiction' of child pornography that is knowingly

---

[2]*See* Appendix to Opening Brief at 44-47, *Fink v. State*, Del. Supr. Ct. No. 344, 2002.
[3]Appendix to Opening Brief at 62, *Fink v. State*, Del. Supr. Ct. No. 344, 2002.

'dealt' or possessed by a defendant constitutes the basis for a separate offense under the [two] statutes." *Fink*, 817 A.2d at 788. The court also noted that Fink could be arguing that possession of child pornography under §1111(1) was a lesser included offense of unlawful dealing under §1109(4), and his convictions for possession were thus invalid under the Double Jeopardy Clause. *Fink*, 817 A.2d at 788. The court decided that it need not reach that question because the trial record established that each of the 30 counts in the indictment was premised on a distinct image.[4] *Fink*, 817 A.2d at 789.

     5. In his federal habeas petition, Fink contends that his conviction "on 30 separate counts amounted to multiple prosecutions for the same offense inviolation of the Double Jeopardy Clause...." DI 1 at ¶12(2). Reading the petition in light of the state court papers,[5] respondents assume that Fink intends to present the two issues decided by the state supreme court. The issues having been raised on direct appeal, the claims are obviously exhausted. But Fink is not entitled to relief on either of his double jeopardy claims because the decision of the state supreme court is not contrary to or an unreasonable application of Supreme Court precedent, and his claims thus fail to warrant relief under the federal habeas statute.

    *Multiplicity*. Under 28 U.S.C. § 2254(d), this Court must determine whether the state court adjudication of Fink's multiplicity claim was an unreasonable application of clearly established federal law when it concluded that Fink had committed 15 separate

---

[4]*See* Appendix to Opening Brief at 62, *Fink v. State*, Del. Supr. Ct. No. 344, 2002.
[5]*See DeShields v. Snyder*, 829 F.Supp. 676, 678 n.1 (D. Del. 1993).

offenses of unlawful dealing in child pornography and 15 separate offenses of possession of child pornography. As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad

pronouncements or generative principles in the opinion. The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149. Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of

decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

The Double Jeopardy Clause protects the defendant against, *inter alia*, multiple charges under the same statute. When the same statutory violation is charged twice, the question is whether the Delaware General Assembly intended the facts underlying each count to make up a separate unit of prosecution. *See Bell v. United States*, 349 U.S. 81, 81, 83-84 (1955); *see also Ladner v. United States*, 358 U.S. 169, 173 (1958) (propriety of charging multiple counts of assault rests on the legislative intent in enacting the statute). "Where consecutive sentences are imposed at a single trial, the role of the [Double Jeopardy Clause's] constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *see also Jones v. Thomas*, 491 U.S. 376, 381 (1989); *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992) ("To identify the congressionally intended units of prosecution for this offense, we first look to the language of the statute.") (citations omitted). Thus, in this case, to determine whether Fink's indictment was multiplicitous, the state court had to decide how the General Assembly intended to punish unlawful dealing in and possession of child pornography. The state supreme court having asked the correct question in light of *Bell* and *Ladner*, Fink can not show that the state court decision is contrary to Supreme Court precedent.

The Delaware Supreme Court decided that each picture constituted a separate offense under each of the two statutes. *Fink*, 817 A.2d at 788. Because the state supreme court decided that the applicable unit of prosecution was each picture, this Court is constrained by that interpretation of state law. *See Missouri v. Hunter*, 459 U.S. 361, 368 (1983) (federal court must accept state court's interpretation of state law "that the legislature intended that punishment for violations of the statutes be cumulative"); *Hack v. Elo*, 38 Fed. Appx. 189, 194-95 (6th Cir. Feb. 5, 2002); *Gillespie v. Ryan*, 837 F.2d 628, 632 (3d Cir. 1988) ("More generally, it appears that the decision in *Hunter*, equating the multiple punishment analysis under the double jeopardy clause with an analysis of the substantive criminal law, leaves virtually no room for federal relief for state prisoners based on the multiple punishment prong of the double jeopardy clause. Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law.") (citations omitted); *Tarrant v. Ponte*, 751 F.2d 459, 464-65 (1st Cir. 1985); *Thomas v. Warden, Maryland State Penitentiary*, 683 F.2d 83, 84-85 (4th Cir. 1982). *See also Brown*, 432 U.S. at 167 ("We are mindful that the [state] courts 'have the final authority to interpret . . . that State's legislation.'") (quoting *Garner v. Lousiana*, 368 U.S. 157, 169 (1961)). In turn, the state supreme court deciding that each picture was the applicable unit of prosecution, it follows under *Bell*, for example, that Fink could be convicted of and sentenced for 15 counts of unlawful dealing in child pornography and 15 counts of possession of child pornography. The decision of the state supreme court

rejecting Fink's multiplicity argument, therefore, was not an unreasonable application of Supreme Court precedent.

*Multiple charges under separate statutes*.  The Double Jeopardy Clause also protects the defendant against multiple charges under separate statutes.  *E.g., Blockburger v. United States*, 284 U.S. 299 (1932).  Under the familiar test set out in *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  284 U.S. at 304.  Under the *Blockburger* test, a court looks to the statutory elements of the crime charged to determine if there is any overlap.  *Iannelli v. United States*, 420 U.S. 770, 787 n. 17 (1975).

But the state supreme court decided in Fink's case that it did not have to reach the question of whether possession of child pornography under §1111 is an included offense of unlawful dealing in child pornography under §1109(4).  *Fink*, 817 A.2d at 789.  That was because each count of unlawful dealing was based on a separate and distinct picture, and each count of possession was based on a separate and distinct picture, different than those underlying the unlawful dealing counts.  Under those circumstances, there was no double jeopardy defect in Fink's convictions and sentences.  *Slavek v. Hinkle*, 359 F.Supp.2d 473, 495-96 (E.D. Va. 2005).  The decision of the state

supreme court rejecting this double jeopardy claim by Fink was not an unreasonable application of Supreme Court precedent, and this claim fails under §2254(d)(1).

      6. **First Amendment challenge**. Fink was charged with having violated Title 11, section 1109(4) and Title 11, section 1111 of the Delaware Code.[6] Section 1109(4), at the time of the offense charged in the indictment (March 2000), prohibited intentional compilation, entry, receipt, storage, printing, reproduction, or other possession, by means of a computer, of "any photograph, image, file or data which depicts a child engaging in a prohibited sexual act or in the simulation of such an act." Del. Code Ann. tit. 11, §1109(4) (Supp. 1998).[7] Section 1111 prohibited knowing possession of "any visual matter" or "any computerized file or data" "depicting a child engaging in a prohibited sexual act" or in the simulation of a prohibited sexual act. Del. Code Ann. tit. 11, §1111 (Supp. 1998). The two statutes were amended in July 2000 to their current form. 72 Del. Laws ch. 480, §§8-15 (July 26, 2000).

      Relying on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), Fink contended on direct appeal that his convictions were invalid because the two statutes criminalized speech protected by the First Amendment. The state supreme court concluded otherwise, holding that *Free Speech Coalition* did not render the Delaware statutes unconstitutional. The statutes under which Fink was charged prohibited possession of

---

[6]The indictment is reproduced at Appendix to Opening Brief at 48-58, *Fink v. State*, Del. Supr. Ct. No. 344, 2002

[7]"Prohibited sexual act" is defined at Del. Code Ann. tit. 11, §1103(f).

material that visually depicted a child engaging in sexual acts; the statutes did not reach material that appeared to, but did not, show a child engaging in sexual conduct. *Fink*, 817 A.2d at 791. In his federal habeas petition, Fink contends that the two statutes are overbroad, thus violating the First Amendment. DI 1 at ¶12(3). The issue having been raised on direct appeal, the claim is exhausted. But Fink is not entitled to relief on his First Amendment claim because the decision of the state supreme court is not contrary to or an unreasonable application of Supreme Court precedent, and his claims thus fail to warrant relief under the federal habeas statute.

The Supreme Court in *Free Speech Coalition* held that 18 U.S.C. §§2256(8)(B) and (D) violated the First Amendment. The federal law prohibited, *inter alia*, a "visual depiction [that] is, or appears to be, of a minor engaging in sexually explicit conduct" (§2256(8)(B)) and a "visual depiction [that] is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct" (§2256(8)(D)). *See* 535 U.S. at 241, 242. But Fink was not prosecuted under a state statute that is identical in terms to the federal statutes at issue in *Free Speech Coalition*. There might well be a substantial parallel between §2256(8)(D) and Del. Code Ann. tit. 11, §1109(5), but Fink was convicted of violating §1109(4), not §1109(5); indeed, §1109(5) was not enacted into law until after Fink had been indicted. Moreover, there was no dispute in Fink's case that the individuals shown in the photographs, images, and

computer files were in fact actual children.[8] *Free Speech Coalition* does not apply to images of actual children, a conclusion the federal courts of appeals have uniformly reached,[9] and the state court's decision in Fink's case is hardly an unreasonable application of *Free Speech Coalition*. *See Price v. Vincent*, 538 U.S. 634, 643 n.2 (2003) (citing lower federal and state court decisions to show that state court decision at issue was not unreasonable); *Chadwick v. Janecka*, 312 F.3d 597, 613 (3d Cir. 2002).

    7. **Ineffective assistance of appellate counsel**. Three search warrants were issued by Superior Court judges in Fink's case. The first warrant authorized a search of Fink's house and car to locate client files and various financial records of Fink. The second warrant authorized a search of the computers and related storage media that had been seized in the execution of the first warrant. The third warrant authorized a search of the computers and storage media to look for child pornography. Before trial, Fink moved to suppress the pornographic image investigators found when executing the second warrant and all of the images found in the execution of the third warrant. In March 2001, a Superior Court judge denied the motion. *State v. Fink*, 2001 Del. Super.

---

[8]Brief for Appellee at 27-28, *Fink v. State,* Del. Supr. Ct. No. 344, 2002. *See Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (federal prisoner made no showing that any of images were not of actual children).

[9]*United States v. Wollet,* 164 Fed. Appx. 672, 676-77 (10th Cir. 2006); *Becht v. United States*, 403 F.3d 541, 549-50 (8th Cir. 2005); *United States v. Holm*, 326 F.3d 872, 875 (7th Cir. 2003); *United States v. Kelly*, 314 F.3d 908, 910-12 (7th Cir. 2003); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002); *United States v. Bender*, 290 F.3d 1279, 1282 n.2 (11th Cir. 2002); *United States v. Maxwell*, 49 Fed. Appx. 410, 411 (4th Cir. 2002); *United States v. Davis,* 41 Fed. Appx. 566, 569 n.3 (3d Cir. 2002).

LEXIS 188 (reproduced as attachment to Brief for Appellant, *Fink v. State*, Del. Supr. Ct. No. 578, 2005). Fink later challenged the issuance of the first warrant; Superior Court denied that motion in February 2002. *State v. Fink*, 2002 Del. Super. LEXIS 27 (reproduced as attachment to Brief for Appellant, *Fink v. State*, Del. Supr. Ct. No. 578, 2005).

On direct appeal, only the issuance of the first warrant was challenged. *Fink*, 817 A.2d at 786-87. In state post-conviction proceedings, Fink complained that appellate counsel was ineffective because he did not challenge on appeal the denial of the motion to suppress the picture found when investigators executed the second warrant. Appendix to Brief for Appellant at 16-21, *Fink v. State*, Del. Supr. Ct. No. 578, 2005. Superior Court denied the motion, and on appeal, the state supreme court affirmed that decision. *Fink v. State*, No. 578, 2005 (Del. Mar. 14, 2006). In his federal habeas petition, Fink presents that same claim of ineffective assistance. DI 1 at ¶12(4). The issue having been raised on direct appeal, the claim is exhausted. But Fink is not entitled to relief because the decision of the state supreme court is not contrary to or an unreasonable application of Supreme Court precedent, and his claim thus fails to warrant relief under the federal habeas statute.

In Fink's case, the state supreme court identified the applicable Supreme Court precedent -- *Smith v. Robbins*, 528 U.S. 259 (2000)[10] -- and Fink does not charge otherwise.

---

[10]*Fink*, No. 578, 2005, order at ¶8 & n.7.

Thus, for purposes of the inquiry required by section 2254(d), the decision of the state supreme court is not contrary to Supreme Court precedent. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). The question, then, turns to whether the state court decision was an unreasonable application of *Smith*. *See Werts*, 228 F.3d at 204.

*Smith* applies to the context of counsel's failure to raise a particular issue on appeal the well-settled standard of *Strickland v. Washington*, 466 U.S. 668 (1984). 528 U.S. at 285, 288-89. Thus, Fink had to show that counsel's failure to challenge on direct appeal the execution of the second warrant was objectively unreasonable. *See, e.g., United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Buehl v. Vaughn*, 166 F.3d 163, 173 (3d Cir. 1999); *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). In turn, he had to show that if appellate counsel had raised the issue of the second warrant on appeal, there is a reasonable probability that he would have prevailed on appeal.

In the state post-conviction proceedings, Superior Court required appellate counsel to submit an affidavit (under Criminal Rule 61(g)(2)) in response to Fink's claim of ineffective assistance. Counsel did so, and he explained that after reviewing the particular motion to suppress, the testimony at the suppression hearing, and the Superior Court's decision, he concluded that the Superior Court decision was not wrong. Appendix to Brief for Appellant at 54-55, *Fink v. State*, Del. Supr. Ct. No. 578, 2005. That assessment was correct, and the state courts could sensibly rely on counsel's affidavit in rejecting Fink's claim of ineffective assistance. The basis for Fink's

disagreement with counsel's conclusion is a line of Tenth Circuit authority.  *See* Brief for Appellant at 14-15, *Fink v. State*, Del. Supr. Ct. No. 578, 2005.  But the Tenth Circuit's position has been criticized by commentators, and several federal district courts have reached conclusions consistent with the Superior Court's denial of Fink's motion to suppress.  *See United States v. Maali*, 346 F.Supp.2d 1226, 1245-47, 1265 (M.D. Fla. 2004); *United States v. Harding*, 273 F.Supp.2d 411, 423-24, 425 n.74 (S.D.N.Y. 2003); *United States v. Gray*, 78 F.Supp.2d 524, 528-31 (E.D. Va. 1999); Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 HARV. L. REV. 531, 571-80 (2005); David J.S. Ziff, *Fourth Amendment Limitations on the Execution of Computer Searches Conducted Pursuant to a Warrant*, 105 COLUM. L. REV. 841 (2005).  Given this authority, counsel's conclusion that the Superior Court decision was not wrong can not be said to be objectively unreasonable for purposes of *Smith* and *Strickland*.  *See Buehl*, 166 F.3d at 174; *Sistrunk*, 96 F.3d at 671.

      8.  On the basis of the Superior Court docket, it appears that the transcript of the suppression hearing on November 6, 2000 has been prepared; that the transcript of the trial proceedings on March 5-8, 2002 has been prepared; and that an excerpt of the sentencing proceedings on May 23, 2002 has been prepared.  In the event that the Court directs the production of any transcript of the state court proceedings, respondents reasonably anticipate that such transcript could be produced within 90 days of any order by the Court.

9. The petition should accordingly be dismissed without further proceedings.

/s/ **LOREN C. MEYERS**
Loren C. Meyers
Chief of Appeals Division
Del. Bar ID 2210
loren.meyers@state.de.us
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500

July 25, 2006

## CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of the United States District Court for the District of Delaware, hereby certifies that on July 25, 2006,

1. He electronically filed the attached document (Answer) with the Clerk of the District Court using CM/ECF which will send notification of the filing to the following registered participants:

Joseph M. Bernstein, Esq.
Suite 302
800 N. King St.
Wilmington, DE  19801
jmbern001@comcast.net.

/s/ **Loren C. Meyers**
Loren C. Meyers
Chief of Appeals Division
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID 2210