## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH E. FINK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-181-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

―――――――――

Joseph M. Bernstein, Esq.  Attorney for petitioner.

Loren C. Meyers, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

―――――――――

## MEMORANDUM OPINION

_____Feb  4_____, 2009
Wilmington, Delaware

―――――――――――

[1]Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).



Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Kenneth E. Fink ("Fink") is an inmate at the James T. Vaughn Correctional

Center in Smyrna, Delaware.  Fink filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254.  (D.I. 1.)   For the reasons that follow, the court will

dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts leading to Fink's arrest and conviction are as follows:

In March 2000, the Office of Attorney General began investigating Fink, an attorney and
member of the Delaware Bar, for misuse and for conversion of client funds for personal
use.  To assist its investigation, the State obtained a search warrant for Fink's car and
residence to look for client records, financial information and legal documents.  The State
executed the search warrant on March 21, 2000, seizing two desktop computers, two hard
drives, forty-two zip disks, two CD-ROMS, and three floppy disks.

A second search warrant, granted the following day, permitted a search of the seized
computer equipment.  While searching a seized CD, a police officer opened a file named
"pre-teen.jpg" and discovered that it was child pornography.  The State then obtained a
third search warrant to search the same computer equipment for additional evidence of
child pornography.  Execution of that third warrant revealed more than 190 images of
child pornography.

Fink filed a pre-trial motion to suppress all of the child pornography seized during the
execution of the second and third warrants.  Fink argued that: (I) the discovery of the
pornography resulted from a search that was beyond the scope of the second warrant; (ii)
the second warrant's execution did not adhere to the guidelines outlined in its supporting
affidavit; and (iii) the second warrant lacked sufficient particularity and was overbroad.
Fink also claimed that the third warrant, and all evidence seized during its execution, was
the tainted fruit of the overbroad execution of the second warrant.  The Superior Court
denied Fink's suppression motion.

On March 8, 2002, a jury convicted Fink of fifteen counts of Unlawfully Dealing in Child
Pornography and fifteen counts of Possession of Child Pornography.  Fink was sentenced
to ninety-eight years at Level V, suspended after serving eight years, for thirty-five years
probation.  Fink raised seven claims of error on direct appeal, including an argument that

1

the first warrant was vague and overbroad. He did not, however, challenge the propriety of the issuance or execution of the second and third warrants. [The Delaware Supreme Court] affirmed Fink's judgments of conviction and sentences on appeal.

*Fink v. State*, 894 A.2d 406 (Table), 2006 WL 659302, at *1 (Del. Mar. 14, 2006).

In March 2004, Fink filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, asserting that: (1) defense counsel provided ineffective assistance by failing to present expert testimony to support the argument in the suppression motion that the seizure of child pornography pursuant to warrants two and three violated Fink's rights under the Fourth Amendment because the police did not follow proper protocol; and (2) defense counsel provided ineffective assistance by failing to appeal the trial court's ruling regarding the admissibility of evidence seized pursuant to warrants two and three. (D.I. 12, App. to Appellant's Op. Br. in *Fink v. State*, No.578,2005, at A-21.) The Rule 61 motion was referred to a Commissioner of the Superior Court, who issued a Report and Recommendation concluding that Fink had procedurally defaulted the substantive issues alleged in the two ineffective assistance of counsel claims. The Commissioner then held that the motion should be denied as procedurally barred by Rule 61(i)(3) because Fink's ineffective assistance of counsel claims failed to satisfy either prong of the *Strickland* test and therefore did not constitute cause for his default. (D.I. 12, Attachment to Appellant's Op. Br. in *Fink v. State*, No.578,2005, dated Jan. 9, 2006.) The Superior Court adopted the reasoning of the Commissioner's Report and Recommendation, but denied the ineffective assistance of counsel claims as meritless. *State v. Fink*, IN00-05-1260 thru 1286, IN00-05-1752 thru 1755, Order at pp. 3-4 (Del. Super. Ct. Oct. 28, 2005). Fink appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *Fink v. State*, 894 A.2d 406 (Table), 2006 WL 659302 (Del. Mar. 14, 2006).

2

Fink timely filed the instant § 2254 petition, and the State file an answer. (D.I. 1; D.I. 10.) Fink's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

### B. Standard of Review Under AEDPA

If a petitioner presented the substance of his federal habeas claim to the state's highest court, and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

3

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[ed] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 1086 (2005).

When reviewing a § 2254 petition, a federal court must presume that the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Fink asserts four grounds in his petition: (1) the search warrant authorizing a search of Fink's residence violated his Fourth Amendment rights, and therefore, the evidence seized as a fruit of that warrant and succeeding search warrants should have been suppressed at trial; (2) the statutes under which Fink was convicted were "overbroad" in violation of the First Amendment; (3) appellate counsel provided ineffective assistance by failing to appeal the trial court's ruling concerning the validity of the search of Fink's computers that was conducted pursuant to the second warrant; and (4) Fink's convictions on thirty separate counts amounted to multiple prosecutions for the same offense in violation of the Double Jeopardy Clause of the Fifth

4

Amendment.[2] (D.I. 1.) The State contends that the petition should be denied in its entirety because claim one is barred by *Stone v. Powell* and the remaining three claims are without merit. (D.I. 10.)

## A. Claim one: Fourth Amendment violation

The State properly argues that Fink's Fourth Amendment claim is not cognizable on federal habeas review under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *Id.*; *See Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, Fink had a full and fair opportunity to litigate his Fourth Amendment claim. He

_____

[2]The court has re-numbered the claims.

filed a pre-trial motion to suppress the one child pornography image discovered during the

execution of the second warrant and all of the child pornography discovered during the search

that was executed pursuant to the third warrant. The Superior Court denied the motion after

conducting a hearing. Fink then presented the same claim to the Delaware Supreme Court on

direct appeal, and the Delaware Supreme Court denied the claim as meritless. Accordingly, the

court will deny claim one as barred by *Stone*.[3]

## B. Claim two: First Amendment challenge

On direct appeal, Fink argued that §§ 1109(4) and 1111 were unconstitutionally

overbroad. In support of his argument, Fink cited the United States Supreme Court decision,

*Ashcroft v. The Free Speech Coalition*, 535 U.S. 234 (2002), in which the Supreme Court struck

down, as overbroad and unconstitutional, two sub-sections of the Child Pornography Prevention

Act of 1996 ("CPPA") that extended the federal prohibition of child pornography to sexually

explicit images which appeared to depict minors but were produced without using any real child.

The Supreme Court concluded that virtual child pornography is protected under the First

Amendment because it constitutes speech that records no crime and creates no victims by its

production. *Id*. at 250, 256.

In an attempt to benefit from the holding in *Free Speech Coalition*, Fink contended that

the term "depicts," as used in both § 1109 and § 1111, could be read as banning virtual

(computer created) child pornography, thereby rendering both statutes unconstitutionally

---

[3]Fink had a "full and fair" opportunity to litigate his Fourth Amendment claim whether or
not the Superior Court properly denied his suppression motion. *See, e.g., Marshall v. Hendricks*,
307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n erroneous or summary resolution by a state
court of a Fourth Amendment claim does not overcome the [*Stone*] bar.") ; *Gilmore v. Marks*,
799 F.2d 51, 56 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987).

overbroad. (D.I. 12, Appellant's Op. Br. in *Fink v. State*, No.344,2002, at pp. 30-36.) However, the Delaware Supreme Court rejected Fink's argument and held that *Free Speech Coalition* did not render the Delaware statutes unconstitutional. As explained by the state supreme court, Fink was charged and convicted under two Delaware state statutes which, at the time of his offense, prohibited possession of material that visually depicted **actual** children engaging in sexual conduct, whereas the sections of the Federal statute struck down by the Supreme Court in *Free Speech Coalition* prohibited possession of material that visually depicted **virtual** children engaging in sexual contact. *Fink*, 817 A.2d at 790-91(emphasis added). The Delaware Supreme Court then noted that several federal circuit and district courts found that *Free Speech Coalition* applies only to virtual child pornography, and therefore concluded that Fink's argument was without merit.

In this proceeding, Fink again contends that §1109 and § 1111 are unconstitutional because they are overbroad under the rule established by *Free Speech Coalition*. Given the Delaware Supreme Court's denial of this claim on its merits, the court must determine whether the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

"According to [the] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, - U.S. -, 128 S.Ct. 1830 (2008). Moreover, a defendant who raises an overbreadth complaint "bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003)(internal quotations and citations omitted).

7

The court concludes that the instant claim does not warrant relief. There is no dispute

that the pornographic images at issue in Fink's case were of actual children, not virtual children,

and there is no question that the applicable versions of § 1109(4) and § 1111 prohibited

pornography involving images of actual children, not virtual children.[4] Although *Free Speech*

*Coalition* struck a federal ban on virtual pornography for being overbroad, the decision did not

_____

[4]When Fink committed the charged offenses in March 2000, and when the indictment
was returned in June 2000, § 1109(4) and § 1111 read as follows:

> Del. Code Ann., tit. 11, §1109(4) (1999): a person is guilty of dealing in material
> depicting a child engaging in a prohibited sexual act when "[t]he person, by means of a
> computer, intentionally compiles, enters, accesses, transmits, receives, exchanges,
> disseminates, stores, makes, prints, reproduces or otherwise possesses any photograph,
> image, file, or data which depicts a child engaging in a prohibited sexual act or in the
> simulation of such an act."

> Del. Code Ann., tit. 11, §1111 (1999): a person is guilty of possession of child
> pornography by "knowingly possessing any visual matter depicting a child engaging in a
> prohibited sexual act or in the simulation of such an act, or any computerized file or data
> which contains any image depicting a child engaging in a prohibited sexual act or in the
> simulation of such an act."

On July 26, 2000, well after the issuance of Fink's indictment, § 1109 was amended to
include an entirely new subsection (5), which provides that

> [a person is guilty of dealing in child pornography when] the person knowingly
> advertises, promotes, presents, describes, transmits or distributes any visual depiction, exhibition,
> display or performance with intent to create **or convey the impression that such visual
> depiction, exhibition, display or performance is or contains a depiction of a child engaging
> in a prohibited sexual act or in the simulation of such an act**. Del. Code Ann., tit. 11,
> §1109(5) (2000)(emphasis added).

However, as noted by the State in this proceeding, even though there might "be a
substantial parallel between § 2256(8) [of the CPPA] and Del. Code Ann. tit. 11, § 1109(5), []
Fink was convicted of violating § 1109(4) not §1109(5); indeed, § 1109(5) was not enacted into
law until after Fink had been indicted." (D.I. 10, at p. 11.) In other words, whether or not
§1109(5) falls within the purview of *Free Coalition Speech*'s protection of virtual child
pornography is irrelevant to determining whether § 1109(4) is overbroad.

8

alter the Supreme Court's well-settled precedent that child pornography involving real children is not protected by the First Amendment. Consequently, to the extent the holding in *Free Speech Coalition* provides First Amendment protection to virtual child pornography, that holding does not apply to Fink's case. Accordingly, the court concludes that the Delaware Supreme Court's rejection of Fink's overbreadth challenge was not contrary to, or involve an unreasonable application of, clearly established Supreme Court precedent.

## C. Claim three: ineffective assistance of appellate counsel

Three search warrants were issued in Fink's case. The first warrant authorized a search of Fink's house and car in order to locate client files and various financial records. The second warrant authorized a search of the computers and related storage media that had been seized during the execution of the first warrant. The third warrant authorized a search of the computers and storage media in order to look for child pornography.

Prior to trial, Fink moved to suppress the pornographic image investigators found when executing the second warrant, as well as all of the images found during the execution of the third warrant. A Delaware Superior Court judge denied the suppression motion in March 2001. *State v. Fink*, 2001 WL 660105 (Del. Super. Ct. Mar. 30, 2001). Fink subsequently challenged the first warrant for being overbroad, and a Superior Court judge rejected that challenge in February 2002. *State v. Fink*, 2002 WL 312882 (Del. Super. Ct. Feb. 25, 2002).

On direct appeal, Fink's counsel only challenged the issuance of the first warrant. *Fink*, 817 A.2d at 786-787. Consequently, during his state post-conviction proceedings, Fink asserted a claim that appellate counsel provided ineffective assistance because he did not challenge on appeal the denial of the motion to suppress the picture found during the execution of the second

9

warrant. The Superior Court denied the claim as meritless, and the Delaware Supreme Court affirmed that decision. *See Fink v. State*, 2006 WL 659302.

Now, in claim three, Fink once again contends that appellate counsel provided ineffective assistance on appeal by failing to challenge the denial of the suppression motion pertaining to the second warrant. Because the Delaware Supreme Court adjudicated the merits of this claim, the court can only grant relief under § 2254(d)(1) if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

In *Smith v. Robbins*, 528 U.S. 259 (2000), the United States Supreme Court held that the two-pronged standard governing ineffective assistance of counsel claims enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) also applies to claims alleging ineffective assistance of appellate counsel. *Smith,* 528 U.S. at 285. Consequently, to satisfy the first prong of the *Strickland/Smith* standard, Fink must demonstrate that "counsel's [failure to raise the issue on appeal] fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688; *Smith*, 528 U.S. at 285-86. To satisfy the second *Strickland/Smith* prong, Fink must demonstrate "there is a reasonable probability that, but for counsel's error," he would have prevailed on his appeal. *Strickland*, 466 U.S. at 687-96; *Smith*, 528 U.S. at 285-86. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

10

Here, the Delaware Supreme Court identified *Strickland* and *Smith* as governing Fink's ineffective assistance of appellate counsel claim, and it analyzed Fink's allegation within the framework established by those cases. Therefore, the state supreme court's decision is not contrary to clearly established Supreme Court precedent. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine whether the Delaware Supreme Court's denial of claim three constituted an unreasonable application of the *Strickland/Smith* standard to the facts of Fink's case. Under this prong, habeas relief will only be warranted if the Delaware Supreme Court's application of *Strickland* and *Smith* "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000).

According to the affidavit filed by appellate counsel in Fink's Rule 61 proceeding, counsel decided against challenging the second warrant only after he reviewed the motion to suppress the evidence obtained during the execution of the second warrant, as well as the testimony offered at the suppression hearing; that review led counsel to conclude that the trial court acted reasonably in denying the suppression motion. (D.I. 12, App. to Appellant's Op. Br. in *Fink v. State*, No.578,2005, at A-54, A-55.) In turn, during Fink's Rul 61 proceeding, the Superior Court ultimately determined that counsel's "pre-trial investigation, preparation and conduct during the trial and on appeal were the product of sound trial strategy and not at all unreasonable under the circumstances." *State v. Fink*, IN00-05-1260 thru 1285, IN00-05-1752 thru 1755 , Comm. Rep. & Rec. (Del. Super. Ct. Apr. 29, 2005); *State v. Fink*, IN00-05-1260

11

thru 1285, IN00-05-1752 thru 1755 , Order (Del. Super. Ct. Oct. 28, 2005). The Superior Court also found that Fink failed to establish prejudice under *Strickland* because he provided only "conclusory allegations with no factual background to substantiate his claims that the result on appeal would have been different." *State v. Fink*, IN00-05-1260 thru 1285, IN00-05-1752 thru 1755 , Comm. Rep. & Rec. at p. 14. On post-conviction appeal, the Delaware Supreme Court determined that the record supported the Superior Court's conclusion that counsel's decision not to appeal the denial of Fink's motion to suppress was a strategic decision, and that such decision was reasonable under the circumstances. *Fink,* 2006 WL 659302, at *2. The Delaware Supreme Court then explained that Fink's challenges to the suppression motion were meritless, and therefore, Fink could not satisfy *Strickland*'s first prong because he could not establish that his appellate counsel acted objectively unreasonably in deciding to refrain from asserting a meritless challenge to the second warrant. *Id*. at *2-3. Given its conclusion that Fink's claim failed to satisfy *Strickland*'s first prong, the Delaware Supreme Court did not reach the second prong of *Strickland*. *Id*. at *3.

In this proceeding, Fink contends that appellate counsel should have argued that opening each file exceeded the scope of the second warrant because there were other less intrusive means available for conducting the search. To the extent this claim is based upon Fink's belief that a challenge to the second warrant had a greater chance of success on direct appeal than the challenges to the first and third warrants that appellate counsel actually did raise, Fink will only prevail by demonstrating that the claim based on the second warrant "was clearly stronger than" the other claims presented. *Smith*, 528 U.S. at 287-88.

Fink has failed to satisfy this burden. As an initial matter, the court notes that Fink has

12

not advanced any argument to demonstrate that counsel's decision not to challenge the second
warrant was incorrect or unreasonable, nor has he advanced any argument to demonstrate a
reasonable probability that his appeal would have been successful had counsel challenged the
second warrant instead of the first warrant. Indeed, Fink has not even advanced an alternative
method of searching other than opening the files. Fink's failure to make any concrete allegations
of actual prejudice and substantiate them constitutes sufficient reason for the court to summarily
dismiss claim three. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v.
Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).

In addition, however, the court concurs with the Delaware Supreme Court's conclusion
that counsel rendered an objectively reasonable strategic decision by deciding to only challenge
the first warrant. Counsel's three appellate challenges to the first warrant were premised on the
theory that, if the first warrant failed, then each succeeding warrant would similarly fail under a
domino effect.[5] (D.I. 12, Appellant's Op. Br. in *Fink v. State*, No.578,2005, at p.10.) The court
sees nothing unreasonable in this theory because, as aptly stated by the Delaware Supreme Court,
"without a warrant to search the home [first warrant], there would be no seizure of any computer
equipment - let alone later warrants authorizing a search of that seized equipment." *Fink*, 2006
WL 659302, at *2.

And finally, the wording of the second warrant belies Fink's argument that the search of
his computers was not conducted in accordance with guidelines set forth in the affidavit and/or

---

[5]More specifically, the other four claims raised the following challenges: the charges were
multiplicitous and violated double jeopardy, the trial court provided an improper jury instruction,
Fink's sentence is excessive, and the pornography statutes are unconstitutionally overbroad in
violation of the First Amendment.

13

warrant application for the second warrant. For instance, paragraph forty-two of the affidavit and

application for the second warrant provided, in relevant part, that

> [t]he search procedure of the electronic data contained in computer operating software,
> hardware or memory devices will be performed in a controlled environment and may
> include the following techniques
>
>> a. surveying various file "directories" and the individual files they contain
>> (analogous to looking at the outside of a file cabinet for the markings it contains
>> and opening a drawer believed to contain pertinent files);
>> b. "opening" or reading the first few "pages" of such files in order to determine
>> their precise contents;
>> c. "scanning" storage areas to discover and possibly recover deleted data;
>> d. scanning storage areas for deliberately hidden files; and/or
>> e. performing key word searches through all electronic storage areas to determine
>> whether occurrences of language contained in such storage areas exist that are
>> related to the subject matter of the investigation.

(D.I. 12, App. to Appellant's Op. Br. in *Fink v. State*, No.578,2005, at pp.A-48 to A-49.) The

fact that the affidavit and application for the second warrant states that the search procedure "may

include" the enumerated methods demonstrates that the police officer was not limited to use

those search methods listed, nor was the officer otherwise prohibited from using a particular

search method. In fact, subsection (b) specifically permits "opening" the first few pages of the

computer files, which is the method used by the police officer in conducting his search.

Consequently, because the opening of each file fell within the scope of the search permitted,

appellate counsel did not perform deficiently by failing to raise the instant meritless challenge to

the second warrant. Accordingly, the court concludes that the Delaware Supreme Court

reasonably applied *Strickland* and *Smith* in denying claim three.

### D. Claim four: multiplicity and double jeopardy

Fink was indicted in **June 2000** and charged with violating § 1109(4) and § 1111. The

charges in the indictment were based upon the **March 2000** discovery of the child pornography

14

images. When Fink committed the charged offenses in March 2000, and when the indictment

was returned in June 2000, § 1109(4) and § 1111 read as follows:

> Del. Code Ann., tit. 11, §1109(4) (1999): a person is guilty of dealing in material
> depicting a child engaging in a prohibited sexual act when "[t]he person, by means of a
> computer, intentionally compiles, enters, accesses, transmits, receives, exchanges,
> disseminates, stores, makes, prints, reproduces or otherwise possesses any photograph,
> image, file, or data which depicts a child engaging in a prohibited sexual act or in the
> simulation of such an act."

> Del. Code Ann., tit. 11, §1111 (1999): a person is guilty of possession of child
> pornography by "knowingly possessing any visual matter depicting a child engaging in a
> prohibited sexual act or in the simulation of such an act, or any computerized file or data
> which contains any image depicting a child engaging in a prohibited sexual act or in the
> simulation of such an act."

The Delaware Code in effect at the time of Fink's offenses did not define the terms "visual

depiction" or "any computerized file or data." *See* Del. Code Ann. tit. 11, § 1103(1999).

Thereafter, in July 2000, the Delaware General Assembly amended the relevant portions

of both statutes as follows:

> Del. Code Ann., tit. 11, §1109(4) (2000)(new language is in bold typeface): a person is
> guilty of dealing in **child pornography** when that person, "by means of a computer,
> intentionally compiles, enters, accesses, transmits, receives, exchanges, disseminates,
> stores, makes, prints, reproduces or otherwise possesses any photograph, image, file, data
> **or other visual depiction** of a child engaging in a prohibited sexual act or in the
> simulation of such an act." *See also* Del. Code Ann., tit. 11, § 1109 (2008)(explicitly
> noting that 72 Laws 2000, ch. 480, §§8 to 14, the law enacting the amendment, became
> effective July 26, 2000).

> Del. Code Ann., tit. 11, §1111 (2000) (new language is in bold typeface):  a person is
> guilty of possession of child pornography when

>> **(1) the person knowingly possesses any visual depiction of a child engaging in
>> a prohibited sexual act or in the simulation of such an act; or**

>> **(2) the person knowingly possesses any visual depiction which has been
>> created, adapted, modified or edited so as to appear that a child is engaging
>> in a prohibited sexual act or in the simulation of such an act.**

15

*See* 72 Laws 2000, ch. 480, §§8 to 14. Section § 1103 was also amended to include a definition

of the term "visual depiction." According to the relevant portions of the new subsection (g) to §

1103, a "visual depiction" includes, but is not limited to:

> (2) Data which is stored or transmitted on or by any computer, or on or by any digital
> storage medium or by an other electronic means which is capable of conversion into a
> visual image; or
>
> (3) Any picture, or computer-generated image or picture, or any other image whether
> made, stored or produced by electronic, digital, mechanical or other means.

See Del. Code Ann., tit. 11, § 1103 (2000).

To summarize, the July 26, 2000 amendments to the charging statutes added the language

"any visual depiction" to § 1109(4), replaced § 1111's language "any visual matter" with the

language "any visual depiction," and entirely rewrote § 1111 and divided it into two subsections,

(1) and (2).

Prior to trial, Fink moved to dismiss twenty-nine counts of the indictment on multiplicity

grounds. Specifically, he noted that the state could not prove the sequence of

acquisition/possession of the visual imagery, and argued that the State could not sustain its

burden of proving that thirty separate crimes occurred, as opposed to one crime consisting of the

acquisition of thirty visual images of child pornography. The trial judge denied the motion after

hearing arguments presented by both sides. Fink renewed his multiplicity argument on appeal,

arguing that he could only be charged with, and convicted of, a single pornography count under §

1109(4) or § 1111, not fifteen counts under each statute, based on the theory that a collection of

images could result only in a single charge. *Fink v. State*, 817 A.2d 781, 788 (Del. 2003).

In its published decision pertaining to Fink's direct appeal, the Delaware Supreme Court

16

rejected Fink's multiplicity/double jeopardy argument after looking at the language of 11 Del.

Code Ann. § 1109(4) and § 1111(1). The Delaware Supreme Court noted that both statutes use

the term "visual depiction" in the singular, and interpreted that particular statutory language to

mean that each picture constituted the applicable unit of prosecution. *Id.*

In claim four, Fink raises the same multiplicity/double jeopardy argument(s) denied by

the Delaware Supreme Court in his direct appeal. In its answer, the State asserts that the

Delaware Supreme Court addressed the merits of Fink's argument, and therefore concludes that

the court must review Fink's multiplicity/double jeopardy claims pursuant to § 2254(d)(1) to

determine whether the Delaware Supreme Court's court decision rejecting Fink's multiplicity

argument was either contrary to, or an unreasonable application of, clearly established law. In its

discussion of the Supreme Court precedent governing Fink's multiplicity claim, the State

properly explains,

> The Double Jeopardy Clause protects the defendant against, *inter alia*, multiple charges
> under the same statute. When the same statutory violation is charged twice, the question
> is whether the Delaware General Assembly intended the facts underlying each count to
> make up a separate unit of prosecution. *See Bell v. United States*, 349 U.S. 81, 83-84
> (1955); *see also Ladner v. United States*, 358 U.S. 169, 173 (1958)(propriety of charging
> multiple counts of assault rests on the legislative intent in enacting the statute). "Where
> consecutive sentences are imposed at a single trial, the role of the [Double Jeopardy
> Clause's] constitutional guarantee is limited to assuring that the court does not exceed its
> legislative authorization by imposing multiple punishments for the same offense." *Brown
> v. Ohio*, 432 U.S. 161, 165 (1977) []Thus, in this case, to determine whether Fink's
> indictment was multiplicitous, the state court had to decide how the General Assembly
> intended to punish unlawful dealing in and possession of child pornography.

(D.I. 10.) To summarize the State's position, in order to properly review Fink's

multiplicity/double jeopardy argument, the Delaware Supreme Court had to determine the

"applicable unit of prosecution" under both §1109 and §1111 by looking to the language of the

17

relevant statute, legislative history, and the statutory scheme. *See Ladner*, 358 U.S. at 177 (1958); *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992).

It is at this point in its analysis that the court reaches an impasse. In performing the double jeopardy/multiplicity inquiry on habeas review, the court must accept the Delaware Supreme Court's interpretation of Delaware's statutes. *See Missouri v. Hunter*, 459 U.S. 361, 368 (1983)(on habeas review, a federal court must accept state court's interpretation of state law "that the legislature intended that punishment for violations of the statutes be cumulative"). Typically, in Delaware, absent express legislative intent to the contrary, the law applicable at the time of the offense governs the prosecution, not a subsequent statutory amendment.[6] *See* Del. Code Ann. tit. 11, § 211(b) (2000). Applying this principle to Fink's case would suggest that the versions of § 1109(4) and § 1111 in effect when Fink committed the offenses in March 2000 were the "relevant" statutes to be used when determining the applicable unit of prosecution.[7] However, it appears that the Delaware Supreme Court interpreted the language contained in the amended versions of § 1109 and § 1111 when it reviewed claim four during Fink's direct appeal,

---

[6]From what the court can discern, nothing in 72 Laws 2000, ch. 480, §§8 to 14, (which amended § 1109(4) and § 1111), states whether the amendments apply retroactively or what effect the amendments should have on pending prosecutions for acts that occurred prior to July 27, 2000. Given this background, it appears that Delaware's general savings statute must be considered, which provides that,

Any action, case, prosecution, trial or other legal proceeding in progress under or pursuant to any statute relating to any criminal offense set forth under the laws of this State shall be preserved and shall not become illegal or terminated in the event that such statute is later amended by the General Assembly, irrespective of the stage of the proceeding, **unless the amending act expressly provides to the contrary. For the purposes of such proceedings, the prior law shall remain in full force and effect**. Del. Code Ann. tit. 11, § 211 (2000) (emphasis added)

[7]The record does not indicate that a superseding indictment was issued.

18

not the statutory language that was in effect when Fink committed the underlying offenses.[8]  If, indeed, the Delaware Supreme Court incorrectly applied the amended versions of the charging statutes in analyzing the multiplicity/double jeopardy claim Fink raised on appeal instead of the versions of the statutes in force in March 2000, then the amended statutes were not the "relevant" statutes for determining the applicable unit of prosecution in Fink's case.  In turn, the court has not found any Delaware Supreme Court case interpreting the language that was contained in the former statutes, namely, the language "any visual matter" contained in § 1109(4) and §1111 or the language "any computerized file or data which contains any image depicting a child engaging in a prohibited sexual act or in the simulation of such act" contained in § 1111.  Considering that the court's role on habeas review does not involve "speculating" on how the Delaware Supreme Court would have ruled on this issue, the court is unable to perform the appropriate habeas analysis at this juncture.  Accordingly, the State will be ordered to provide additional briefing on this issue.[9]

---

[8]Although the Delaware Supreme Court did not mention the July 26, 2000 amendments to § 1109 and § 1111, the fact that the Delaware Supreme Court referred to the language "any visual depiction" that is only contained in the amended statutes, as well as to subsection (1) of § 1111, which did not exist when Fink committed the offenses or when he was indicted, suggests that the Delaware Supreme Court reviewed Fink's multiplicity/double jeopardy claims with respect to the amended versions of §1109 and §1111 rather than the versions of the statutes in force on the date Fink committed the underlying offenses.

[9]The court notes that the record demonstrates repeated confusion over the versions of the statutes applicable to Fink's case.  For instance, as indicated in the trial transcript, on the second day of trial, March 6, 2002, the trial judge denied Fink's motion to dismiss twenty-nine of the thirty counts, stating that "[t]he statute uses the term '**visual depiction**' in the singular.  And each depiction is a reoccurrence of offensive conduct against a child.  That motion is denied." (D.I. 12, App. to Appellant's Op. Br. in *Fink v. State*, No.344,2002, at A-62.) (emphasis added).  The trial judge's use of the term "visual depiction" suggests that the trial judge applied the amended version of the statutes to the multiplicity argument raised in Fink's motion to dismiss the indictment, not the statute in force in March 2000.  However, the portion of the trial transcript

19

related to the jury instruction indicates that the judge applied the version of the statutes in force when Fink committed the underlying offense, because the judge defined the term "dealing" as it was defined prior to July 26, 2000 "a person is guilty of unlawfully dealing in material depicting a child engaged in a prohibited sexual act when the person, by means of a computer, intentionally compiles, disseminates, stores, or otherwise possesses any file, photograph, data or image of a child engaging in a prohibited sexual act or in the simulation of such an act." *Id.* at A-66.

On appeal, when Fink argued that the Superior Court erred in denying his motion to dismiss twenty-nine of the thirty counts as multiplicitous, he did not raise the issue of the July 2000 statutory amendments or the trial court's reference to the language contained in the statutory amendments when it denied his motion. Yet, in an unrelated argument, Fink argued that the trial court, in part, provided a jury instruction that did not comport with the applicable law by providing a definition of "prohibited sexual act" that was not in force on the date Fink committed the offenses. The "new" language which Fink argued was improperly included in the instruction as part of the definition for a prohibited sexual act was "[a]ny other act which is intended to be a depiction or simulation of any act described in this subsection." Del. Code Ann. tit. 11, § 1103(g). Although Fink asserted that subsection (g) was added on July 26, 2002, and the State asserted that subsection (g) was added in June 2000, it actually appears that this "new" language was added on July 26, 2000, the same date as the amendments to § 1109(4) and §1111 discussed earlier. Nevertheless, the Delaware Supreme Court referred to the definition as having been amended in "June 2000, before Fink went to trial." *Fink*, 817 A.2d at 789. The Delaware Supreme Court then held that the trial judge properly instructed the jury on the principles of the law, because the "amended definition of 'any other act which is intended to be a depiction or simulation of any act described in this subsection" added nothing [to] the scope of Fink's criminal liability. In any event, the instruction hardly amounted to plain error. On this particular point, the evidence of Fink's guilty was overwhelming." *Id.*

Admittedly, the Delaware Supreme Court did not explicitly assert that the Superior Court committed an error by using the amended version of the statutory definition in Fink's jury instruction. However, the court views the Delaware Supreme Court's statement that using the amended definition in the jury instruction did not constitute plain error or that the amended definition did not add anything to the scope of Fink's liability as an implicit recognition that the inclusion of the amended definition in the jury instruction could have constituted an error if the amended definition had added something to the scope of Fink's criminal liability. Applying this implicit reasoning of the Delaware Supreme Court to the circumstances surrounding Fink's multiplicity claim suggests that the Delaware Supreme Court may have concluded that the Superior Court erred in denying the motion to dismiss twenty-nine of the thirty counts by analyzing the motion to dismiss under the amended statutes. Stated another way, if the relevant statutes for multiplicity purposes were the versions of § 1109(4) and § 1111 in effect in March 2000, and if the Superior Court actually applied the amended versions of the statutes in denying Fink's motion to dismiss the indictment, then the Delaware Supreme Court may have concluded that the deletion of the language "any visual matter" and "any computerized file or data which contains any image depicting a child engaging in a prohibited sexual act" from the relevant statutes, as well as the addition of the language "any visual depiction" contained in the amended

20

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. LAR 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that claims one, two, and three of Fink's petition do not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability for those three claims.

## VI. CONCLUSION

For the reasons stated, claims one, two, and three asserted in Fink's petition for habeas relief pursuant to 28 U.S.C. § 2254 are denied. The court will withhold a decision on claim four until the State provides additional briefing. An appropriate order shall issue.

---

versions of § 1109(4) and § 1111(1) and (2), so significantly altered the Superior Court's determination of the "applicable unit of prosecution" for multiplicity purposes that Fink was entitled to relief.