## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH E. FINK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-181-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

_____

Joseph M. Bernstein, Esq.  Attorney for petitioner.

Loren C. Meyers, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

_____

### MEMORANDUM OPINION

_____, 2010
Wilmington, Delaware

Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Kenneth E. Fink ("Fink") is an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware.  Fink filed a petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254 asserting a total of four claims.  (D.I. 1.)  The court denied claims one, two, and three in a Memorandum Opinion dated February 4, 2009.  After reviewing the supplemental briefing provided by the parties, the court will deny claim four for the reasons that follow.

## II. BACKGROUND

In March 2000, while investigating Fink in an attorney disciplinary matter, the State seized from Fink's home two desktop computers, two computer hard drives, forty-two zip discs, two CD-ROMS, and three floppy disks.  (D.I. 25.)  In total, the police discovered approximately 192 pictures of child pornography that showed actual pre-pubescent children engaging in hard-core sex acts.  (D.I. 12, State's Ans. Br. in *Fink v. State*, No. 344,2002, at p. 28.)  Some of the images were found on a CD that had been prepared as a result of downloading the photographs from the hard drive of the computer.  Others were found in zip drives that had been similarly prepared.  No images were found on the hard drive of the computer itself.  (D.I. 12, Motion in Limine, App. to Appellant's Op. Br. in *Fink v. State*, No.344,2002, at A-45.)

On March 8, 2002, a Delaware Superior Court jury convicted Fink of fifteen counts of unlawfully dealing in child pornography and fifteen counts of possession of child pornography.  Fink was sentenced to ninety-eight years at Level V, suspended after serving eight years for thirty-five years probation.  Fink raised seven claims of error on direct appeal, including an

1

argument that the fifteen counts of possession of child pornography asserted in the indictment violated the rule against multiplicity, as did the fifteen counts of unlawfully dealing in child pornography.  Fink also implicitly argued that his convictions for possession of child pornography and unlawfully dealing in child pornography violated the double jeopardy clause because possession of child pornography under § 1111 is a lesser included offense of unlawfully dealing in child pornography under § 1109(4).  The Delaware Supreme Court rejected all seven arguments and affirmed Fink's convictions and sentences. *Fink v. State*, 894 A.2d 406 (Table), 2006 WL 659302, at *1 (Del. Mar. 14, 2006).

After unsuccessfully pursuing state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, Fink filed a federal habeas petition in this court alleging four grounds of relief;  grounds one and two assert that the search of his residence and computer were illegal, ground three asserts that the applicable Delaware statutes were overbroad, and ground four alleges that Fink's convictions violated the Double Jeopardy Clause.  The court denied the first three claims in a Memorandum Opinion and Order dated February 4, 2009, but withheld a decision on the fourth claim after determining there was a high probability that the Delaware Supreme Court had applied the incorrect versions of the relevant state criminal statutes during its review of the double jeopardy argument Fink raised on direct appeal.  The court ordered the parties to provide additional briefing on the following three questions:

> (a)  Which versions of Del. Code Ann. tit. 11, § 1109(4) and Del. Code Ann. tit. 11, §1111 (pre-July 2000 or post-July 2000) did the Delaware Supreme Court apply in deciding Fink's direct appeal?
>
> (b)  Does the Delaware Supreme Court's decision with respect to Fink's multiplicity/double jeopardy claim constitute an adjudication on the merits warranting application of the deferential standard contained in § 2254(d)(1)?

2

>(c)  If the Delaware Supreme Court's decision with respect to Fink's
>multiplicity/double jeopardy claim does not constitute an adjudication on the
>merits for federal habeas purposes, the State shall address claim four under the
>appropriate standard of review.

The parties have filed their supplemental briefing.  Fink's fourth and final claim is ready for

review.

## III.  STANDARD OF REVIEW

If a petitioner presents the substance of his federal habeas claim to the state's highest

court, and the state court adjudicates the federal claim on the merits, a federal habeas court can

only grant habeas relief on the same claim if the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
>clearly established Federal law, as determined by the Supreme Court of the United States;
>or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in
>light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground.  *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009).

In addition, when reviewing a § 2254 petition, a federal court must presume that the state

court's determinations of factual issues are correct, unless the petitioner presents clear and

convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S.

322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual

3

decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

And finally, it is well-established that "[s]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Consequently, a federal court on habeas review is bound by a state court's interpretation of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Bradshaw v. Richey*, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991)).

## V. DISCUSSION

Fink was charged with, and convicted on, fifteen counts of unlawfully dealing in child pornography in violation of 11 Del. Code Ann. § 1109(4) ) ("§ 1109(4)") and fifteen counts of possessing child pornography in violation of 11 Del. Code Ann. § 1111 ("§ 1111"). In this proceeding, Fink explicitly asserts that his convictions for thirty separate counts amounted to multiple prosecutions for the same offense in violation of the Double Jeopardy Clause. (D.I. 1, ¶ 12.) The State construes Fink's explicit but brief claim as asserting the same two arguments considered by the Delaware Supreme Court on direct appeal. The court concurs with the State's conclusion that the claim asserts the following two sub-arguments. First, Fink explicitly contends that the indictment suffered from a multiplicity defect, because the State was unable to prove that the images had been obtained in discrete acts. According to Fink, his case is analagous to taking property from multiple owners at the same place or time in a single continuous act. Second, Fink implicitly contends that charging him separately for both possession and dealing in child pornography constituted double jeopardy, because possession of child pornography is a lesser included offense of dealing in child pornography.

4

Having articulated the arguments, the court must next determine the appropriate standard of review for claim four. As surmised by the court in its earlier Memorandum Opinion, and as asserted by both parties in their supplemental briefings, the Delaware Supreme Court examined the two sub-arguments contained in claim four pursuant to the statutes amended in July 2000, rather than the versions of the statutes in effect when Fink was indicted in March 2000. Both Fink and the State conclude that the Delaware Supreme Court's failure to review Fink's double jeopardy argument under the former versions of the applicable criminal statutes mandates that the court review the entire claim *de novo*, and the court concurs with the parties' assessment. The issue in this proceeding is whether Fink's convictions under former § 1109(4) and § 1111 violate double jeopardy and multiplicity principles, not whether his convictions under amended § 1109(4) and § 1111 violate those principles. Although the Delaware Supreme Court identified and applied the proper constitutional double jeopardy/multiplicity principles to Fink's final claim, it did so with respect to the amended versions of § 1109 and § 1111, which were not the statutes forming the basis for Fink's indictment, conviction, or his argument on direct appeal.[1] In these circumstances, the court concludes that the Delaware Supreme Court failed to adjudicate the merits of the actual claim that was fairly presented to it.[2] Thus, the court will review the

---

[1]Although Fink's appellate opening brief did not explicitly identify which version of the statute he was relying on for his double jeopardy/multiplicity argument, the brief did refer to the former versions of § 1109(4) and § 1111 for his argument that the statutes were facially unconstitutional. (D.I. 12, Appellant's Op. Br. in *Fink v. State*, No. 344,2002, at pp. 31-32.)

[2]The 2000 amendments to the statutes at issue in this case added the language "any visual depiction" to § 1109(4), replaced § 1111's language "any visual matter" with the language "any visual depiction," and divided § 1111 into two subsections, (1) and (2), placing the bulk of former § 1111's language in subsection (1). The court notes that neither party requests the court to certify a question to the Delaware Supreme Court about the allowable unit of prosecution in former § 1109(4) and § 1111. Even if asked, however, the court would deny a certification

5

arguments in claim four *de novo*.[3]

---

request as unnecessary. First, nothing in the legislative history indicates an express intent by the General Assembly that the July 2000 amendments to § 1109(4) and § 1111 were to "work a change in the underlying substantive law." *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993). For instance, as noted by the Delaware Supreme Court in a more recent child pornography case, *Sisson v. State*, 903 A.2d 288, 312 (Del. 2006), the purpose of the overall statutory scheme prohibiting child pornography is to curtail the proliferation of child pornography, and "the legislature added that clause [visual depiction] in an attempt to ensure that the criminal code could meet the challenges posed by the new technology." *Id.* at 310 n.102 (Del. 2006). The synopsis in the legislative history for the 2000 amendments to the child pornography statutes supports this conclusion, explaining that,

> over the last few years, child pornographers have increasingly used a variety of new technologies, including computers and the Internet, to create, store, and distribute child pornography. This Bill is intended to modernize Delaware's child pornography laws in order to ensure that our Criminal Code is able to meet the challenges posed by these new technologies. This Act will give our law enforcement agencies the tools they need to successfully investigate and prosecute child pornographers.

Del. Bill Summ., 2000 Reg. Sess. S.B. 386, Del. G.A., 140th G.A., 2000.

Second, as explained in the text of the opinion, after employing the same method of statutory analysis as the Delaware Supreme Court in Fink's appeal, the court concludes that the former versions of § 1109(4) and § 1111 were not ambiguous. Given this lack of ambiguity in former § 1109(4) and § 1111, and the lack of change in the underlying substantive law for both versions of the statutes, it is reasonable to conclude that the legislative purpose of curtailing the proliferation of child pornography applies for both the former and amended versions of § 1109 and § 1111. Consequently, certification of the state law issue is unnecessary because there is no "urgent reason for an immediate determination of such question [] by [the Delaware Supreme Court] ." *See* Del. Sup. Ct. R. 41(a)(ii).

[3]Applying *de novo* review in this situation does not violate the well-settled rule that a federal court cannot re-examine state-court determinations on state law, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), because the Delaware Supreme Court did not render a decision with respect to the applicable state law in this case, namely, former §1109(4) and §1111. When performing this *de novo* review, the court will not be bound by the Delaware Supreme Court's interpretation of amended § 1109(4) and § 1111. *See Wisconsin v. Mitchell,* 508 U.S. 476, 484 (1993)(where the Wisconsin Supreme Court did not, strictly speaking, construe the Wisconsin statute in the sense of defining the meaning of a particular statutory word or phrase, the United States Supreme Court was not bound by the Wisconsin Supreme Court's construction of the statute); *Tarrant v. Ponte*, 751 F.2d 459, 463-64 (1st Cir. 1985)(noting that a federal habeas court may not be bound by a state court's interpretation of state law when state court is accused of not

## A. Multiplicity Argument

The Double Jeopardy Clause protects a defendant against: (1) successive prosecutions; (2) multiple charges under separate statutes requiring proof of the same factual events; and (3) multiple charges under the same statute. U.S. const. amend. V. The multiplicity doctrine involves the third of these protections. *See Sanabria v. United States*, 437 U.S. 54, 65 n.19 (1978). When, as here, a defendant is convicted of violating one statute multiple times, "the question is whether the facts underlying each count were intended by [the legislature] to constitute separate 'units' of prosecution." *Bell v. United States*, 349 U.S. 81, 83-84 (1955). In other words, when determining whether the imposition of multiple punishments and/or convictions in a single prosecution violates the double jeopardy clause, the "clearly established" Supreme Court precedent requires a court to ascertain whether the multiple punishments and/or convictions comply with the legislative intent of the applicable statutes.

Determining legislative intent "must begin with the language employed by [the legislature] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009)(internal citations omitted). If the statutory language is clear and unambiguous, the plain meaning of the statutory language controls, and the reviewing court's inquiry is at an end.[4]

---

grounding its "unit of prosecution" determination on an actual construction of the relevant state statute).

[4]In determining that Fink's convictions were not multiplicitous, the Delaware Supreme Court properly articulated and applied the Supreme Court precedent governing such double jeopardy issues to the *amended* versions of the statutes. For instance, after recognizing that the answer to the Federal constitutional double jeopardy issue presented to it depended on the legislative intent behind the two criminal statutes involved, the Delaware Supreme Court held that the statutes unambiguously set forth the unit of prosecution as each picture or image of child

7

*Jimenez v.Quaterman,* 129 S.Ct. 681, 685 (2009)(internal citations omitted); *Alexa v. Kent County Levy Court*, - A.2d -, 2010 WL 1052064, at \*2 (Del. Mar. 23, 2010)(internal citations omitted). If the statutory language does not express the legislative intent unequivocally, "a court traditionally turns to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose." *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000).

Determining whether statutory language is ambiguous or plain requires an examination of the statutory language itself, the context in which the language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)(when performing this inquiry, courts rely on the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). As the commonsense canon "*noscitur a sociis*" recognizes, an ambiguous term may "be given more concise content by the neighboring words with which it is associated." *United*

---

pornography. Although the Delaware Supreme Court did not expressly conclude that amended § 1109 and § 1111 are unambiguous, the Delaware Supreme Court stated that the "clearest reading of the statutes is that each individual visual depiction of child pornography . . . constitutes the basis for a separate offense under the statutes." *Fink*, 817 A.2d at 788. The court views the phrase "clearest reading" as implicitly holding that the amended statutes are not ambiguous. *Fink*, 817 A.2d at 788. Given its "unit of prosecution" determination, the Delaware Supreme Court then concluded that Fink's multiple convictions for his possession of multiple photographs depicting child pornography did not violate double jeopardy and multiplicity principles.

Consequently, if the claim before the court involved the amended versions of § 1109 and § 1111, the court would be bound by the Delaware Supreme Court's conclusion that the General Assembly clearly intended each photograph or image to constitute the allowable unit of prosecution. Given the Delaware Supreme Court's finding of clear legislative intent, the court's inquiry would be at an end, resulting in the dismissal of Fink's double jeopardy and multiplicity under § 2254(d).

*States v. Stevens*, - S.Ct. -, 2010 WL 1540082 (Apr. 20, 2010)(internal citations omitted).

Consequently, even if a statute's words or provisions are ambiguous because they are

"reasonably susceptible of different interpretations,"[5] a court looks at the surrounding words and

provisions in context. *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 466 (2001). And, if the

statutory language does not express the legislative intent unequivocally, "a court traditionally

turns to the legislative history and the atmosphere in which the statute was enacted in an attempt

to determine the congressional purpose." *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir.

2000). "Once the plain meaning of the statute is determined, it is conclusive except in rare cases

in which the literal application of a statute will produce a result demonstrably at odds with the

intentions of its drafters." *Id.*

Significantly, under Delaware precedent a statute is not rendered ambiguous because the

parties disagree about the meaning of the statutory language.[6] *Ross v. State*, 990 A.2d 424, 428

(Del. 2010)(citations omitted). Rather, statutory ambiguity may only be found if, after reading

the disputed language in proper context, the disputed language is reasonably susceptible to

different interpretations. *Centaur Partners IV v. National Intergroup, Inc.*, 582 A.2d 923, 927

(Del. 1990). If the statute is not ambiguous, the words must be applied as written, unless such a

---

[5]*Nat'l. R.R. Passenger Corp. v. Atchison Topeka & Sante Fe Ry. Co.*, 470 U.S. 451, 473
n.27 (1985).

[6]Nor does "[t]he simple existence of some statutory ambiguity" warrant application of
[the rule of lenity], for most statutes are ambiguous to some degree." *Muscarello v. United
States*, 524 U.S. 125, 138 (1998). The "mere possibility of articulating a narrower construction"
does not by itself make the rule of lenity applicable, and the rule of lenity cannot be "invoked by
a grammatical possibility" that raises a manifestly "implausible reading" of the legislative
purpose. *Caron v. United States*, 524 U.S. 308, 316 (1998).

9

literal application would have a result contrary to legislative intent. *Leatherbury v. Greenspun*, 939 A.2d 1284, 1289 (Del. 2007).

However, if, after consulting "traditional canons of statutory construction," a court is "left with an ambiguous statute," "the rule [of lenity] comes into operation." *Burgess v. United States*, 553 U.S. 124, 128 S.Ct. 1572, 1580 (2008)(internal citations omitted); *United States v. Johnson*, 529 U.S. 53, 59 (2000). The rule of lenity is a rule of statutory construction employed by federal courts when interpreting ambiguous *federal* statutes,[7] requiring that such statutes "be construed in favor of the accused." *Staples v. United States*, 511 U.S. 600, 618 n.17 (1994)(emphasis added). "This policy of lenity means that the [Supreme] Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended," and the "touchstone of the rule of lenity is statutory ambiguity." *Albernaz v. United States*, 450 U.S. 333, 342 (1981)(internal citations omitted). For the moment, the court will ignore the issue as to

---

[7]As explained by the Second Circuit, "[b]ecause the rule of lenity is a canon of construction rather than a federal law, and the construction of state law is left to the state courts, we have previously indicated that federal courts cannot vacate a state conviction on lenity grounds unless a state criminal statute is (i) unconstitutionally vague, or (ii) otherwise fails to give constitutionally required fair notice." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 158 n.4 (2d Cir. 2009). In turn, the First Circuit has held that, given the absence of any clear pronouncement from the Supreme Court that the "rule of lenity has been transformed from a rule of construction applicable to statutes that federal courts are charged with interpreting into a constitutional presumption mandated by the double jeopardy clause and made binding on the states through the due process clause of the fourteenth amendment," it remains "unconvinced that the Court's recent double jeopardy decisions impose upon the states a constitutional presumption that lenity should prevail in the face of any ambiguity as to state legislative intent." *Tarrant*, 751 F.2d at 466. Given the absence of any Supreme Court precedent requiring courts to apply the rule of lenity to ambiguous *state* statutes, the court finds that it would be inappropriate for it to apply the rule of lenity to the Delaware statutes at issue here, even if the court were to conclude that those statutes were ambiguous. This conclusion, of course, does not answer the question as to whether the two Delaware statutes at issue in this case were ambiguous in the first place.

10

whether the rule of lenity applies to ambiguous *state* statutes.[8]

In this proceeding, Fink asserts that "a fair reading of the Delaware statutes [§ 1109(4) and § 1111], as they existed at the time of Fink's violation, leads to the conclusion that the language contained in the statutes does not specify the 'unit of prosecution' and is therefore ambiguous." (D.I. 25, at p.14.) Consequently, Fink contends that the court must apply the rule of lenity and resolve any ambiguity concerning the allowable units of prosecution in his favor, resulting in the relief he requests.

In contrast, the State argues that there is no ambiguity with respect to the units of prosecution in § 1109 and § 1111. Focusing on the singular form of the words "photograph, image, file, or data" immediately following the term "any" in § 1109(4), the State contends that the unit of prosecution is each photograph, image, etc. As for § 1111, the State contends that the term "visual matter" used therein should be given its commonly accepted meaning, which is any book, magazine , or other printed or written material. Again, focusing on the singular form of "book, magazine, etc.", the State asserts that the unit of prosecution for §1111 is each separate visual representation. (D.I. 22, at pp. 22-24.)

As previously explained, because the Delaware Supreme Court did not evaluate the instant multiplicity argument with respect to the relevant state statutes, the Delaware Supreme Court's overall conclusion regarding the units of prosecution for amended § 1109(4) and §1111 in Fink's direct appeal does not control in this proceeding. Nevertheless, the court finds the method of statutory analysis utilized by the Delaware Supreme Court during Fink's direct appeal instructive for determining whether the former versions of § 1109 and § 1111 unambiguously set

---

[8]*See infra* note 15.

11

forth the units of prosecution. For example, in determining the legislative intent of amended §1109(4) and §1111, the Delaware Supreme Court noted that "both [amended] § 1109(4) and § 1111(1) use the term 'visual depiction' in the singular." *Fink*, 817 A.2d at 788. Focusing on the singular form of the word, the Delaware Supreme Court opined that the "express intent of the General Assembly [was] to prohibit dealing in [and possessing] individual items of material depicting child pornography," and held that "[t]he clearest reading of the statutes is that each individual 'visual depiction' of child pornography that is knowingly 'dealt' or 'possessed' by a defendant constitutes the basis for a separate offense under the statutes." *Id.*

Three years later, in *Sisson v. State*, 903 A.2d 208 (Del. 2006), the Delaware Supreme Court repeated its method of focusing on the singular form of the word "visual depiction" when determining the unit of prosecution for another Delaware child pornography statute, Del. Code Ann. tit. 11, §1108(1). Section 1108, the companion statute to § 1109 and § 1111, provides that a person is guilty of sexual exploitation of a child when

> the person knowingly photographs or films a child engaging in a prohibited sexual act or in the simulation of such an act, or otherwise knowingly creates a visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act.

Del. Code Ann. tit. 11, § 1108(1). Sisson argued that the trial court should have dismissed nine of the ten counts of sexual exploitation of a child under the multiplicity doctrine. In rejecting this multiplicity argument, the *Sisson* court explained that the legislative intent in § 1108 is very clear, "because under § 1103[g's definition of 'visual depiction'], each separate photograph, motion picture, or digitally created image is a single 'visual depiction.'" *Sisson*, 903 A.2d at 310. Relying on the method of analysis it used in Fink's direct appeal, the *Sisson* court further explained that

12

§ 1108(1) also uses the term "visual depiction" in the singular. Like § 1109(4) and § 1111(1), we are satisfied that the clearest reading of §1108 is that each individual "visual depiction" that the defendant knowingly creates constitutes the basis for a separate offense. Reading the statute and the statutory scheme as a whole, rather than nit-picking through individual sections, Sisson's attempt to distinguish *Fink* by citing the word "any" in §1109(4) is unavailing. In *Fink* we clearly focused on the fact that the statutes used the term "visual depiction" in the singular, not on the term modifying "visual depiction."

*Sisson*, 903 A.2d at 310, n.108.

The Delaware Supreme Court's method of analysis in *Fink* and *Sisson* demonstrates the state supreme court's understanding of the aforementioned canons of statutory construction and the fact that determining whether statutory language is ambiguous or plain requires an examination of the statutory language itself, the context in which the language is used, and the broader context of the statute as a whole. *See Robinson*, 519 U.S. at 341; *Centaur*, 582 A.2d at 927. The court will follow the same method of analysis utilized by the Delaware Supreme Court with respect to amended § 1108, § 1109, and § 1111 in *Fink* and *Sisson*, because nothing in the legislative history of § 1109 and §1111 indicates an express intent by the General Assembly that the July 2000 amendments to § 1109(4) and § 1111 were to "work a change in the underlying substantive law." *Keene*, 508 U.S. at 209; *see supra* note 2.

Applying these same principles of statutory interpretation to the language in former §1109(4) and §1111 ("any photograph" as included in § 1109(4) and "any visual matter" as included in § 1111) leads the court to conclude that the former statutes also set forth the units of prosecution in a unambiguous manner. For instance, former §1109(4) provides that a person is guilty of dealing in material depicting a child engaging in a prohibited sexual act when "[t]he person, by means of a computer, intentionally compiles, enters, accesses, transmits, receives, exchanges, disseminates, stores, makes, prints, reproduces or otherwise possesses any

13

photograph, image, file, or data which depicts a child engaging in a prohibited sexual act or in the simulation of such an act."[9] Even if the General Assembly's use of the term "any", which could mean one or more items,[10] suggests a lack of limitation, the word "any" modifies the list "photograph, image, file, or data." The placement of the word "any" at the beginning of a list of objects (photograph, image, file) in the singular form, along with the inclusion of the singular words "child" and "prohibited sexual act," demonstrates the General Assembly's intent to criminalize as a distinct occurrence the compiling, storing, possessing etc. of each image. *See, e.g., Com. v. Dingle,* 898 N.E.2d 1, 9 n.10 (Mass. App. Ct. 2008)(holding that a "single image can constitute a violation of" M.G.L.A. 272 § 293, where statute uses the term "any visual matter" in the singular); *State v. Kujawa,* 929 So.2d 99, 111 (La. App. 2006)(finding that the use of the article "any" to modify the proscribed images evidences a clear legislative intent that each such image constitutes a single basis for a unit of prosecution); *State v. Cobb,* 732 A.2d 425, 433

---

[9]The amended version of §1109(4) provides that a person is guilty of dealing in **child pornography** when that person, "by means of a computer, intentionally compiles, enters, accesses, transmits, receives, exchanges, disseminates, stores, makes, prints, reproduces or otherwise possesses any photograph, image, file, data **or other visual depiction** of a child engaging in a prohibited sexual act or in the simulation of such an act." (changes from the former version are indicated in bold face). The amendment merely added another term in singular form, "visual depiction", to the list of prohibited items of child pornography in singular form already contained in the statute.

[10]The word "any" has multiple meanings, including: (1) one or some indiscriminately of whatever kind; (2) one, some, or all indiscriminately of whatever quantity; or (3) unmeasured or unlimited in amount, number, or extent. Merriam-Webster's Online Dictionary. In recent years, federal courts have relied on the Supreme Court's decision in *Bell v. United States*, 349 U.S. 81 (1955) to find that the use of the word "any" preceding the object of the offense creates uncertainty and ambiguity as to the allowable unit of prosecution in *federal* statutes. *United States v. Tann*, 577 F.3d 533, 537 (3d Cir. 2009)(firearm possession)(collecting cases); *United States v. Polouizzi*, 564 F.3d 142, 155 (2d Cir. 2009). The court need not follow this precedent, however, because the instant case involves Delaware state statutes, not federal statutes.

(N.H. 1999)(where visual representation includes "any pose . . . reproduced in . . . any photograph," the legislature intended the unit of prosecution to be each separate book, magazine, pamphlet, photograph, or picture); *Randall Book Corp. v. State*, 558 A.2d 715, 721-22 (Md. 1989)(use of word "any" indicated legislature's intent to establish small unit of prosecution); *Educational Books, Inc. v. Comm.*, 323 S.E.2d 84, 86 (Va. 1984)(gravamen of offense prohibiting the sale of "any obscene item" is the sale of a single obscene item). If the General Assembly had intended for the compiling or storing of numerous child pornography images on (or by means of) one computer to constitute a single possessory offense warranting a single offense, then it could have indicated that intent by expressly criminalizing the possession of **any computer** (or computer disk etc.) containing such depictions. *See, e.g.*, *Commonwealth v. Koehler*, 914 A.2d 427 (Pa. Super. 2006)(emphasis added).

The same rationale applies with equal force to determining the intent of former §1111, which provides that a person is guilty of possession of child pornography by "knowingly possessing any visual matter depicting a child engaging in a prohibited sexual act or in the simulation of such an act, or any computerized file or data which contains any image depicting a child engaging in a prohibited sexual act or in the simulation of such an act."[11] Because the term

---

[11]The amended version of § 1111 now provides that a person is guilty of possession of child pornography when

> **(1) the person knowingly possesses any visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act; or**

> **(2) the person knowingly possesses any visual depiction which has been created, adapted, modified or edited so as to appear that a child is engaging in a prohibited sexual act or in the simulation of such an act.**

(bold face type indicates amended language). Although the July 26, 2000 amendment to § 1111 appears more extensive than the amendment to §1109(4), the amendment merely replaced §

15

"visual matter" is not defined in the Delaware Criminal Code, the common meaning of the term controls. *See* Del. Code Ann. tit. 11, § 221(c)("If a word used in this Criminal Code is not defined herein, it has its commonly accepted meaning, and may be defined as appropriate to fulfill the purposes of the provision as declared in § 201 of this title). As defined in other state statutes, the word "visual matter" or "matter" typically means any book, magazine, newspaper, or other printed or written material, or any picture, drawing, photograph, motion picture, or any reproduction. *See*, *e.g.*, Ala. Code § 13A-12-190(12)(1975); Cal. Penal Code § 311(b)(2009); Idaho Code Ann. § 18-14-1(c)(2009)("sexually exploitative material" means any photograph, motion picture, videotape . . ."); Ky. Rev. Stat. Ann. § 531.010(2)(2009); Mass. Gen. Laws Ann. ch. 272 § 31 (2009); Wash. Rev. Code Ann. 9.68A.011(3)(2010). As with former § 1109(4), the placement of the term "any" before the singular phrase "visual matter", then, indicates the General Assembly's intent to prosecute each separate picture, photograph, or other visual representation. *See Williams v. Commonwealth*, 178 S.W.3d 491, 495 (Ky. 2005); *State v. Mather*, 646 N.W.2d 605, 610-11 (Neb. 2002); *State v. Ravell*, 922 A.2d 685, 687-88 (N.H. 2007); *State v. Cobb*, 732 A.2d 425, 433-34 (N.H. 1999).

The court's conclusion is consistent with the Supreme Court's acknowledgment that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982). In *Ferber*, the Supreme Court explained a state's interest in criminalizing the knowing possession and distribution of

---

1111's language "any visual matter" with the language "any visual depiction," placed the bulk of former 1111's language in subsection (1), and created a new subsection (2) relating to images created or edited to appear that a child is engaging in a prohibited sexual act. In short, the main difference in amended § 1111 appears to be that subsection (1) relates to images of real children and subsection (2) relates to virtual images.

16

child pornography as follows:

> [when] the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*Id.* at 759 n.10. Children also suffer profound emotional repercussions from a fear of exposure, and the pressure of keeping the abuse secret. *Id.* According to the Supreme Court, it is "reasonable for [a] state to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand" and alleviating some of these harms to the children depicted. *Osborne v. Ohio*, 495 U.S. 103, 109-111 (1990)("The State's ban on possession and viewing encourages the possessors of these materials to destroy them.") With this constitutional background as context, it is not difficult to understand why the Delaware General Assembly would target individual instances of possession, as opposed to one incident of continuous possession. Each image of child pornography victimizes each child pictured therein and subjects the child to the type of harm former (and amended) § 1109(4) and § 1111 attempt to prevent. In turn, each image creates a permanent record of that particular child's abuse, resulting in the continuos exploitation of the child every time the image is viewed.

Moreover, given Fink's failure to establish that the language of former § 1109(4) and § 1111 was unclear or ambiguous, the court is not obligated to find ambiguity by imagining a variety of alternative interpretations.[12] First, although penal statutes are generally strictly

---

[12]The court notes that Fink cites *State v. Sutherby*, 158 P.3d 91, 94 (Wash. App. 2007) in his reply memorandum to support his argument that the inclusion of the term "any" in § 1109(4) and §1111 creates ambiguity with respect to the unit of prosecution. (D.I. 25, at pp. 12-13.) Interestingly, on March 26, 2010, the Washington legislature agreed on a statutory amendment clarifying the unit of prosecution for its first degree possession of child pornography statute (Wash. Rev. Code Ann. § 9.68A.070 (2010)) as follows:

construed, this maxim is not a command to override common sense and the evident statutory

purpose. *United States v. Cook*, 384 U.S. 257, 262 (1966). Additionally, § 203 of the Delaware

Code explicitly states that the general rule of strict construction does not apply to Delaware's

Criminal Code, and that the provisions of the Code "must be construed to according to the fair

import of their terms to promote justice and effect the purposes of the law." Del. Code Ann. tit.

11, § 203. If the court were to adopt Fink's reasoning, a defendant would have no incentive to

stop compiling or possessing images of child pornography after obtaining the first image,

because he would expose himself to criminal liability for one count of possession or unlawful

dealing no matter how many images he compiled or possessed. This result would not serve the

General Assembly's goal of protecting children and limiting their exploitation. *See Fink*, 817

A.2d at 788 (finding that the overall purpose of § 1109 and § 1111 was "to prohibit dealing in

---

For the purposes of determining the unit of prosecution under this subsection, each
depiction or image of visual or printed matter constitutes a separate offense.

According to the legislative note:

The legislature further finds that due to the changing nature of technology, offenders are
now able to access child pornography in different ways and in increasing quantities. By
amending current statutes governing depictions of a minor in sexually explicit conduct, it
is the intent of the legislature to ensure that intentional viewing of and dealing in child
pornography over the internet is subject to a criminal penalty without limiting the scope
of existing prohibitions on the possession of or dealing in child pornography, including
the possession of electric depictions of a minor engaged in sexually explicit conduct. It is
also the intent of the legislature to clarify, in response to *State v. Sutherby*, 204 P.3d 916
(Wash. 2009), the unit of prosecution for the statutes governing possession of and dealing
in depictions of a minor engaged in sexually explicit conduct. It is the intent of the
legislature that the first degree offenses under RCW 9.68A.050, 9.68A.060, and
9.68A.070 have a per depiction or image unit of prosecution, while the second degree
offenses under RCW 9.68A.050, 9.68A.060, and 9.68A.070 have a per incident unit of
prosecution as established in *State v. Sutherby*, 204 P.3d 916 (Wash. 2009).

Based on the foregoing, the court concludes that *Sutherby* does not support Fink's argument.

18

[and possessing] individual items of material depicting child pornography, and that "each picture is a crime against the child as well as an offense to society.")[13]

For all of these reasons, the court concludes that the plain text, context, and purpose of former § 1109(4) and § 1111 demonstrate that the General Assembly intended prosecution, conviction, and punishment for each photograph or image of child pornography. The word "any" must necessarily be read in context with the rest of the statutory language. In turn, the entire context of former § 1109(4) includes the reference to "photograph or image" of "a **child** engaging in a prohibited **act**," demonstrating that the purpose of the statute is to protect the child victim whose well-being is put in jeopardy by the conduct (possessing) the defendant engages in. (emphasis added) Similarly, the entire context of § 1111 includes the reference to visual matter (picture, drawing , or photograph) of "a **child** engaging in a prohibited **act**," demonstrating that the purpose is to protect the child victim from the conduct (compiling) the defendant engages in. (emphasis added) In short, because the General Assembly's intent is discernible from the language of both statutes, the court's inquiry is at an end. Thus, even if it were appropriate for a federal court on habeas review to resort to the rule of lenity with respect to a double jeopardy claim based on a state statute, the rule is inapplicable in Fink's case because former § 1109(4) and § 1111 were not ambiguous.[14]  Accordingly, the court rejects Fink's argument that his

---

[13]Once again, the court notes that it is deferring to the *Fink* court's finding of legislative intent for §1109(4) and §1111, because nothing in the legislative history of the two statutes indicates an express intent by the General Assembly that the July 2000 amendments to § 1109(4) and § 1111 were to "work a change in the underlying substantive law." *Keene Corp.*, 508 U.S. at 209; *see supra* note 2.

[14]The Supreme Court has not provided a clear pronouncement that "the rule of lenity has been transformed from a rule of construction applicable to statutes that federal courts are charged with interpreting into a constitutional presumption mandated by the double jeopardy clause and

convictions on all thirty counts violate the doctrine against multiplicity.[15]

### B. Double Jeopardy Argument

Fink's original habeas petition also implicitly contends that the possession and the

dealing convictions violate double jeopardy because the fifteen possession counts were

effectively subsumed by the fifteen dealing counts as lesser included offenses. Fink raised this

issue in a motion to dismiss prior to trial. In response, the State asserted that it was unnecessary

to determine if possession is a lesser included offense of dealing, because the possession charges

were based on fifteen distinct images, which were all different from the fifteen distinct images

forming the basis of the dealing charges.[16]  The Superior Court concurred with the State's

reasoning and denied the motion to dismiss because an independent basis existed for each of the

thirty counts. (D.I. 19, Transcript, March 6, 2002, at p.4.)  On direct appeal, Fink explicitly

asserted the multiplicity argument discussed by the court in Section A of this opinion. However,

made binding on the states through the due process clause of the fourteenth amendment."
*Tarrant v. Ponte*, 751 F.2d 459, 466 (1st Cir. 1985)(internal citations omitted). Based on the
absence of such a clear constitutional requirement, several federal courts have held that district
courts cannot apply the rule of lenity to grant a petitioner federal habeas relief on double jeopardy
grounds. *See Lurie v. Wittner,* 228 F.3d 113, 126 (2d Cir. 2000); *Sabetti v. Dipaolo*, 16 F.3d 16,
19 (1st Cir. 1994).

[15]Fink also argues that his convictions under § 1109(4) and § 1111 were multiplicitous
because the State could not prove a temporal or spatial separation with respect to the
downloading of the images, or that Fink formed a separate intent for each offense. Having
determined that Delaware's General Assembly intended to permit prosecutions and convictions
for each image under § 1109(4) and § 1111, the court will not address this alternative argument.
Stated simply, given the discernible legislative intent, the court's inquiry is at end.

[16]Interestingly, during the hearing on the defense motion to dismiss, Fink's counsel
admitted that "it's clear they [the State] have the discretion to say for the fifteen, we're going to
use § 1109(4); for the next fifteen, we're going to use § 1111.  [It] wasn't clear to me [that] there
[were] 30 separate photographs.  We need to designate which is which because the jury has to
know." (D.I. 19, Transcript, March 15, 2002, at p.22.)

focusing on Fink's request to dismiss twenty-nine of the thirty counts, the Delaware Supreme Court also construed the claim as asserting an unarticulated argument that "charging separately for both possession and dealing based on the same image constitutes double jeopardy" under *Blockburger v. United States*, 284 U.S. 299 (1932). *Fink*, 817 A.2d at 788 -89. The Delaware Supreme Court interpreted the premise of the argument to be that possession of child pornography and dealing in child pornography are the "same offense" under the *Blockburger* test because possession constitutes a lesser included offense of dealing in child pornography (hereinafter referred to as the "*Blockburger*/double jeopardy argument"). *Id.*

After identifying the parameters of Fink's unarticulated argument, the Delaware Supreme Court then concluded that it did not have to reach the question of whether possession of child pornography under § 1111 was an included offense of unlawful dealing in child pornography under § 1109(4), because each count of unlawful dealing was based on a separate and distinct picture. In turn, each count of possession was based on a picture separate and distinct from any picture underlying any count of unlawful dealing, and the jury was instructed to record which picture corresponded to each count of the indictment upon which Fink was convicted. The Delaware Supreme Court held that there was no double jeopardy defect in these circumstances.

Interestingly, Fink's reply memorandum in this proceeding alleges that the Delaware Supreme Court incorrectly characterized his unarticulated argument as being based on the "lesser included offense" issue. Fink states that, "[i]n reality, [his "multiple charges under different statutes"] argument was, and is, that he could not be convicted of both sections [§ 1109 and § 1111] if he never "deals in" child pornography, but merely possesses child pornography." (D.I. 25 at p.7.) Fink further asserts that the language "dealing in" as contained in former § 1109(4) is

21

an element of the offense to be proven, not surplusage, and therefore, assuming the success of

Fink's multiplicity argument, the original fifteen counts of dealing should have merged into one

count of possession because the State only proved that he was guilty of possession of child

pornography (hereinafter referred to as the "dealing in/merger argument").

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the
>     applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is based on principles of comity, requiring

a petitioner to give "state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process." *O'Sullivan*,

526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies

the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to

the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert

v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000

WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the

petitioner must present a federal claim's factual and legal substance to the state courts in a

22

manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

None of the arguments asserted in Fink's appellate brief even remotely resemble the "dealing in/merger argument" asserted by Fink in his reply memorandum. Consquently, the court concludes that Fink failed to exhaust state remedies for the dealing in/merger argument asserted in his reply memorandum because he did not "fairly present" the claim to the Delaware Supreme Court on direct or post-conviction appeal.

At this juncture, Delaware Superior Court Criminal Rules 61(i)(1), (2), and (3) would bar Fink from obtaining further review of the claim in a new Rule 61 motion and subsequent post-conviction appeal. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because the petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, the issue is procedurally defaulted,[17] and the court cannot review its merits unless Fink demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.[18] *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v.*

---

[17]*Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).

[18]To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

23

*Thompson,* 501 U.S. 722, 750-51 (1991).

Fink has not provided any cause for his default of this issue, nor has he demonstrated that miscarriage of justice will result unless the court reviews the claim on its merits. Thus, the court concludes that it is procedurally barred from considering Fink's dealing in/merger argument. Accordingly, the court will only consider the *Blockburger*/double jeopardy argument that was actually reviewed by the Delaware Supreme Court during Fink's direct appeal.[19]

The traditional test for double jeopardy claims involving the charging of separate offenses under separate statutes is the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). Pursuant to *Blockburger*, a court must analyze "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993)(citing *Blockburger v. United States*, 284 U.S. 299 (1932)). The rule articulated in

---

*Edwards v. Carpenter,* 529 U.S. 446, 451 (2000);  *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

[19]Surprisingly, Fink's reply memorandum does not assert *any* argument to support the implicit *Blockburger*/double jeopardy claim addressed by the Delaware Supreme Court during his direct appeal and by the State in this proceeding. Viewing the absence of such discussion in Fink's reply memorandum in conjunction with his failure to include any explicit *Blockburger*/double jeopardy argument in his original habeas petition leads the court to believe that Fink is not pursuing habeas relief for the *Blockburger*/double jeopardy argument. Nevertheless, in an extreme effort of caution, and to avoid the perpetuation of unintended misunderstandings that have occurred in this case, the court will review the implicit *Blockburger*/double jeopardy argument reviewed by the Delaware Supreme Court under the pre-AEDPA *de novo* standard of review.

24

*Blockburger* is a "rule of statutory construction to help determine legislative intent;" the rule is "not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 778-79 (1985)(internal citations omitted). Consequently, "even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).

In this case, the court need not address the *Blockburger* test because the multiple "dealing" convictions were based on images of child pornography that were different and distinct from the images forming the basis for the "possession" convictions. Stated another way, the dealing offenses required proof a fact that the possession offenses did not, namely, the specific image related to each separate charge. *See United States v. Polouizzi*, 564 F.3d 142, 159 (2nd Cir. 2009)(declining to determine if possession of child pornography is a lesser-included offense of receipt of child pornography because no double jeopardy violation arises when the possession convictions are based on images which did not form the basis of the receipt convictions); *see c.f. United States v. Miller*, 527 F.3d 54, 58 (3d Cir. 2008)("The Constitution's double jeopardy clause barred entry of separate convictions for receiving and possessing *the same images of child pornography*.")(emphasis added); *see, e.g.*, *State v. Hermes*, 2002 WL 484647, at 82 (Del. Super. Ct. Mar. 28, 2002)(opining that a double jeopardy argument based on a simultaneous prosecution under § 1109 and § 1111 would only have merit if the State had attempted to use the *same* ten photographs of child pornography for the ten possession charges and the ten unlawful dealing charges). Accordingly, the court will deny Fink's *Blockburger*/double jeopardy argument

25

as meritless.[20]

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* 3d Cir. LAR 22.2 (2008). A certificate

of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a

constitutional right" by demonstrating "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without

reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason

would find it debatable: (1) whether the petition states a valid claim of the denial of a

---

[20]Given the unique procedural posture of the instant case, the court recognizes the
possibility that it has erroneously reviewed claim four *de novo*. Yet, Fink would not be entitled
to relief even if the court were to review claim four under the deferential standard in §
2254(d)(1). First, the Delaware Supreme Court's decision was not contrary to clearly established
Federal law because it identified the proper double jeopardy and multiplicity principles
applicable to Fink's claim. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000) ("[A] run-of-the-
mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts
of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"").
Second, in determining whether the Delaware Supreme Court's denial of the claim involved an
unreasonable application of such precedent, the court again would be faced with two alternatives:
(1) find that it was bound by the Delaware Supreme Court's determination that § 1109(4) and §
1111 unambiguously set forth the unit of prosecution as each image of child pornography, or (2)
find that it was not bound and essentially review the issue *de novo*. If bound by the Delaware
Supreme Court's unit of prosecution determination, the court would deny habeas relief for Fink's
multiplicity argument because the Delaware Supreme Court reasonably concluded that Fink's
thirty convictions did not exceed the allowable units of prosecution set forth in the statutes. If
not bound by the Delaware Supreme Court's unit of prosecution determination, the court would
engage in the same *de novo* analysis set forth in the text of the opinion, and still deny relief. In
turn, the court would deny relief for Fink's double jeopardy argument under both standards of
review, because each dealing conviction was based on a separate and distinct image from the
images forming the basis of the possession convictions.

constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that claim four of Fink's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability for those this claim.

## VI.  CONCLUSION

For the reasons stated, claim four asserted in Fink's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KENNETH E. FINK,           )
                                   )
          Petitioner,       )
                                   )
       v.                )      Civ. A. No. 06-181-GMS
                                   )
PERRY PHELPS, Warden, and  )
ATTORNEY GENERAL OF THE  )
STATE OF DELAWARE,      )
                                   )
          Respondents.    )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Claim four of petitioner Kenneth E. Fink's petition for the writ of habeas corpus filed

pursuant to 28 U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**.  (D.I.

1.)

2. The court declines to issue a certificate of appealability because Fink has failed to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: _May 24, 2010_

_____
CHIEF, UNITED STATES DISTRICT JUDGE